[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Copley Ohio Newspapers, Inc. v. Akron*, Slip Opinion No. 2024-Ohio-5677.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5677

THE STATE EX REL. COPLEY OHIO NEWSPAPERS, INC., D.B.A. AKRON BEACON JOURNAL *v.* THE CITY OF AKRON ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Copley Ohio Newspapers, Inc. v. Akron*, Slip Opinion No. 2024-Ohio-5677.]**

*Mandamus—Public-records requests—R.C. 149.43—Newspaper's requests for the personnel files, discipline records, and internal investigations of unidentified law-enforcement officers were requests for information and improper public-records requests—Law-enforcement officers involved in shooting are "uncharged suspects" for purposes of R.C. 149.43(A)(2)(a) and confidential-law-enforcement-investigatory-records exception—Writ granted in part and denied in part.*

(No. 2022-1444—Submitted September 17, 2024—Decided December 6, 2024.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by FISCHER, DEWINE, STEWART,

and DETERS, JJ. KENNEDY, C.J., concurred in judgment only. BRUNNER, J., concurred in part and dissented in part, with an opinion joined by DONNELLY, J.

**Per Curiam.**

{¶ 1} Relator, Copley Ohio Newspapers, Inc., doing business as Akron Beacon Journal ("the Beacon Journal" or "the newspaper"), made numerous public-records requests in 2022 to respondents, the City of Akron and the Akron Police Department (collectively, "the city" or "Akron"), for records identifying the police officers involved in three lethal use-of-force incidents. The city provided some records but redacted information revealing the officers' identities. The newspaper filed this original action in mandamus under the Ohio Public Records Act, R.C. 149.43, seeking to compel the city to produce records without redaction of the officers' names. We grant the writ in part and deny it in part. We grant the Beacon Journal its court costs but deny the Beacon Journal's requests for statutory damages and attorney fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Gross and Rodgers shootings

{¶ 2} In the early morning of December 23, 2021, Akron police were called as James Gross was breaking into the home of his estranged wife. Police officers found Gross holding a knife to his wife's neck and eventually shot and killed him. In February 2022, a reporter at the Beacon Journal asked the city to provide the names of the police officers involved in the shooting.

{¶ 3} By the time the city responded to the newspaper's request, there had been another officer-involved shooting in Akron. Police had been called to a home where Lawrence Rodgers was armed with a gun and threatening another man. Rodgers was shot by police after repeatedly being told to drop his weapon. Rodgers died—but not before he shot and killed the other man.

{¶ 4} On March 3, 2022, the newspaper requested "all incident reports and releasable documentation of the two recent officer-involved shootings." The city provided written reports of the shootings. The reports did not identify the officers who shot Gross or Rodgers.

{¶ 5} On March 21, 2022, the newspaper requested the following additional records as it sought the identities of the officers who shot Gross and Rodgers:

- The personnel file, discipline records (if any), and completed internal investigation files (if any) for Officer Luke as identified in [one of the Gross incident reports].
- All administrative leave or reinstatement notices issued to any employees of the Akron Police Department from Dec. 1, 2021 until March 18, 2022.
- The personnel file, discipline records (if any), and internal investigations (if any) for officers under investigation relating to [the Gross shooting].
- The personnel file, discipline records (if any), and internal investigations (if any) for officers under investigation relating [to the Rodgers shooting].

{¶ 6} The city provided records in response to the first two categories above. In the administrative-leave and reinstatement notices, however, the city redacted the names of the police officers. The city declined to provide records in response to the third and fourth categories. Over the following weeks, the newspaper (through its legal counsel) and the city exchanged correspondence regarding the sufficiency of the records produced by the city. The city eventually produced the personnel files of the officers involved in the Gross and Rodgers shootings but redacted the officers'

names from the documents in the files. The city justified redacting the officers' names with the argument that the officers have a constitutional right to prevent the release of private information that could lead to their serious bodily harm and even death.

### B. The Walker shooting

{¶ 7} On June 27, 2022, Akron police officers shot and killed Jayland Walker after officers believed Walker had fired a gun from his car during a vehicular pursuit. Eight officers fired their weapons at Walker.

{¶ 8} The next day, the Beacon Journal requested numerous records related to the Walker shooting:

- 911 recordings associated with [the Walker shooting] . . .

- The incident report, including supplemental notes of the investigating officers, witness statements and narratives, for the above-referenced incident.

- The personnel file(s) of officer(s) placed on administrative leave pending investigation of the above-referenced incident.

- The body-worn camera footage of responding officers directly involved in the above-referenced incident, including the officer(s) who used deadly force or gave chase to the suspect.

The city provided an incident report, which did not identify the officers who had shot Walker. After the newspaper followed up on its requests in July 2022, the city produced personnel records of eight officers who had been placed on administrative leave. The city redacted the officers' names from the personnel records. The city later produced other records related to the Walker shooting, including additional

incident reports with narratives of the incident. Officers' names were redacted from those reports. Akron's justification for redacting these officers' names was the same as it had been for the other two shootings: that releasing the information put the officers at risk of serious bodily harm and possibly death.

### C. The mandamus claim

**{¶ 9}** In November 2022, the Beacon Journal filed this original action in mandamus. The Beacon Journal seeks a writ of mandamus ordering the city "to provide the requested records, without redactions as to police officer names." The Beacon Journal also seeks awards of statutory damages, court costs, and attorney fees. We issued an alternative writ. 2023-Ohio-1242.

## II. ANALYSIS

**{¶ 10}** Under R.C. 149.43(B)(1), a public office must promptly prepare and make available for inspection all public records responsive to a request. "If a public record contains information that is exempt from the duty to permit public inspection or to copy the public record, the public office or the person responsible for the public record shall make available all of the information within the public record that is not exempt." R.C. 149.43(B)(1).

**{¶ 11}** Mandamus is an appropriate remedy to compel compliance with the Public Records Act. *See* R.C. 149.43(C)(1)(b). To be entitled to a writ of mandamus, the Beacon Journal must establish a clear legal right to the requested relief and a clear legal duty on the part of the city to provide it. *State ex rel. Waters v. Spaeth*, 2012-Ohio-69, ¶ 6. "Exceptions to disclosure under the Public Records Act are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception." *State ex rel. Miller v. Ohio State Hwy. Patrol*, 2013-Ohio-3720, ¶ 23.

**{¶ 12}** The Beacon Journal's amended complaint details several requests for various records between February and July 2022. The requested records

included incident reports from the shootings and personnel files and other records related to the involved officers. Akron provided documents in response to almost all the newspaper's requests before this case was filed. However, the names of police officers involved in the shootings were consistently redacted. The Beacon Journal asks this court to compel the production of records responsive to their public-records requests without the names of the police officers redacted.

## A. Records requests as requests for information

{¶ 13} Akron argues that the Beacon Journal has not shown a clear legal right to a writ of mandamus because its requests were for information and not records. "The Public Records Act does not compel a public office 'to do research or to identify records containing selected information.'" *State ex rel. Shaughnessy v. Cleveland*, 2016-Ohio-8447, ¶ 10, quoting *State ex rel. Fant v. Tober*, 1993 WL 173743, *1 (8th Dist. Apr. 28, 1993), *aff'd*, 1993-Ohio-154.

{¶ 14} As to the requests concerning the Gross and Rodgers shootings, the Beacon Journal's original request was purely for information, seeking the names of officers involved in the first shooting. However, the newspaper subsequently clarified its requests, specifically requesting the incident reports that documented the two then-recent officer-involved shootings. The Beacon Journal then asked for other records, including the personnel records of "officers under investigation relating to" the shootings. As to the Walker shooting, the Beacon Journal requested related 9-1-1 recordings, the incident report, and body-worn-camera footage, as well as the "personnel file(s) of officer(s) placed on administrative leave pending investigation" of the incident.[1]

{¶ 15} We conclude that the requests for the personnel files, discipline records, and internal investigations of unidentified officers were improper public-records requests. This is not a situation in which the request identified the person

---

1. The Beacon Journal's briefing does not address the 9-1-1 tapes or body-camera footage or make any argument for their production in this case.

6

whose records were sought. Rather, the Beacon Journal asked Akron to identify the officers whose records the newspaper sought through reference to other records (i.e., records showing who was "under investigation" or records of officers placed on administrative leave) and then provide the personnel records of the officers so identified from those sources. This is tantamount to a request for information: there is no difference between asking for the names of officers involved in the shooting and requesting the personnel files, discipline records, and internal-investigation records of the officers involved in the shooting. In both instances, the newspaper was requesting information—the names of the officers involved in the shootings. For this reason, we deny the writ as to the Beacon Journal's requests for personnel files, discipline records, and internal-investigation records with the officers' names unredacted.[2]

{¶ 16} The Beacon Journal's requests for other records, however, were proper under R.C. 149.43(B). In its March 2022 public-records request seeking information related to the Gross and Rodgers shootings, the Beacon Journal asked for "[a]ll administrative leave or reinstatement notices issued to any employees of the Akron Police Department from Dec. 1, 2021 until March 18, 2022," the period during which the Gross and Rodgers shootings happened. And in its June 2022 public-records request, the Beacon Journal asked for the "incident report, including supplemental notes of the investigating officers, witness statements and narratives" related to the Walker shooting. These requests identified records related to specific incidents and are proper public-records requests. Thus, the remaining issue in this

---

2. Akron also argues that the officers' names in the personnel files are exempt from disclosure under the public-records act, which exempts the release of residential and familial information of designated public-service workers, including peace officers. *See* R.C. 149.43(A)(1)(p) and (A)(8). Because we hold that the Beacon Journal's requests for personnel files were not proper public-records requests, we need not reach the issue of whether the disclosure of unredacted personnel files implicates R.C. 149.43(A)(1)(p) and (A)(8).

case is whether Akron had a legal basis to redact the names of the officers when it produced these records.

### B. Confidential law-enforcement investigatory records

{¶ 17} Akron argues that the incident reports were properly redacted under the exception for confidential law-enforcement investigatory records ("CLEIR"). Under R.C. 149.43(A)(2), the CLEIR exception includes "any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of [categories identified in R.C. 149.43(A)(2)(a)-(d)]." With respect to the Walker shooting, Akron specifically invokes the exception for records the release of which would create a high probability of disclosure of "[t]he identity of a suspect who has not been charged with the offense to which the record pertains," R.C. 149.43(A)(2)(a) ("uncharged suspect").

{¶ 18} "Whether a particular record is a confidential law enforcement investigatory record is determined by a two-part test. First, is the record a confidential law enforcement record? Second, would release of the record create a high probability of disclosure of any one of the four kinds of information specified in R.C. 149.43(A)(2)?" (Cleaned up.) *Miller*, 2013-Ohio-3720, at ¶ 25*; see also State ex rel. Standifer v. Cleveland*, 2022-Ohio-3711, ¶ 14.

{¶ 19} An "uncharged suspect" is typically an individual who either is or was the subject of a criminal investigation. *See, e.g.*, *State ex rel. Musial v. N. Olmsted*, 2005-Ohio-5521 (former mayor was an uncharged suspect for purpose of CLEIR exception after he was criminally investigated by police and his case was presented to a grand jury, but he was not indicted); *State ex rel. Rocker v. Guernsey Cty. Sheriff's Office*, 2010-Ohio-3288 (priest was an uncharged suspect for purpose of CLEIR exception after being investigated for sexual assault but not indicted by a grand jury). The likelihood of charges against a person does not determine whether he or she is an uncharged suspect for the purposes of the exception. *State ex rel. Ohio*

*Patrolmen's Benevolent Assn. v. Mentor*, 2000-Ohio-214. After becoming an uncharged suspect, a person continues to be an uncharged suspect until he or she has "either been arrested, cited, or otherwise charged with an offense." *State ex rel. Thompson Newspapers, Inc. v. Martin*, 47 Ohio St.3d 28, 30 (1989).

{¶ 20} In *State ex rel. Fluty v. Raiff*, 2023-Ohio-3285, ¶ 35-36, we held that the CLEIR exception can justify redactions of an uncharged suspect's identifying information from law-enforcement incident reports. We agree with Akron that this exception applies to the names of the eight officers redacted from incident reports related to the Walker shooting.

{¶ 21} The eight officers whose names the city seeks to withhold are "uncharged suspects" under this court's prior decisions. Specifically, the shooting was investigated by the Ohio attorney general and the case was presented to a grand jury, which declined to indict the officers. However, the grand jury's decision not to indict does not foreclose a possible federal investigation. Thus, the eight officers were criminally investigated and remain uncharged, making them "uncharged suspects" for purposes of R.C. 149.43(A)(2)(a).

{¶ 22} The parties do not dispute that incident reports of the Walker shooting contain the names of the eight officers who were criminally investigated but not indicted. Indeed, obtaining the officers' identities is the reason that the Beacon Journal sought the reports, and preventing that discovery is the reason that Akron has redacted the reports. The eight officers fit the definition of "uncharged suspects" under R.C. 149.43(A)(2)(a). Thus, to the extent the supplemental incident reports include the eight officers' names, we conclude that the supplemental incident reports have "a high probability of" disclosing—in fact, they are certain to disclose—the identities of uncharged suspects. But the redactions do not differentiate between the officers who were involved in the Walker shooting and those who were not. We therefore grant the writ of mandamus to the extent that we order Akron to produce

copies of the Walker incident reports that redact names of *only* the eight officers who are uncharged suspects.

### C. The *Kallstrom/Keller* exception[3]

{¶ 23} Akron's primary justification for redacting officers' names from the records it produced is that releasing the officers' names would endanger their lives or physical safety. In support of these arguments, Akron points to specific threats made against the officers as well as more generalized threats made toward all police officers in the Akron area.

{¶ 24} In raising this argument, the city invokes R.C. 149.43(A)(1)(v), which applies to "[r]ecords the release of which is prohibited by state or federal law." The city argues that the disclosure of the identities of the officers involved in all three shootings is precluded by the rule of *Kallstrom v. Columbus*, 136 F.3d 1055, 1064 (6th Cir. 1998), which this court adopted in *State ex rel. Keller v. Cox*, 1999-Ohio-264. Under the *Kallstrom* exception, records can be withheld or redacted if they would create a "substantial risk of serious bodily harm, and possibly even death, 'from a perceived likely threat.' " *State ex rel. Cincinnati Enquirer v. Craig*, 2012-Ohio-1999, ¶ 14, quoting *Kallstrom* at 1064.

{¶ 25} After the Gross shooting, Gross's brother repeatedly contacted police investigators, threatening them and the officers involved in his brother's death. As a result, a "be on the lookout" notice was issued by the Akron Police Department in December 2021 to warn officers about Gross's brother. After the Rodgers shooting, a member of Rodgers's family came to the scene of the shooting and threatened to kill or harm the officers involved.

---

3. Akron also invokes the CLEIR exception applicable to the release of records that would create a high probability of disclosure of "[i]nformation that would endanger the life or physical safety of law enforcement personnel," R.C. 149.43(A)(2)(d). Akron does not, however, distinguish between the CLEIR physical-safety exception and the *Kallstrom* exception. Absent any argument for a different analysis applicable to the CLEIR physical-safety exception, we limit our analysis to the *Kallstrom* exception, as argued by the parties.

{¶ 26} As to the Walker shooting, the city points to substantially more evidence. The city cites a report that the FBI released in July 2022, noting the potential for violence during protests after that shooting, as well as contemporaneous correspondence between the city and an FBI agent. The agent wrote that the FBI had intelligence that a violent extremist group was discussing "placing a hit against officers of the Akron Police Department in retaliation for the shooting death of Jayland Walker." In a later email, the agent wrote that other unidentified "attackers" suggested they would "go covert" to blend in with protestors. The city also points to numerous social-media posts about the incident. Some are from the weeks following the Walker shooting. Others are from April 2023, after a grand jury declined to indict the officers.

{¶ 27} The social-media posts range from generalized grievances with police ("If the city does not take action, the people will be forced to") to calls for violence ("Get the rope! LYNCH THEM!!!!!). Many of the threatening posts are directed toward the police department and the police in general. Other posts could be interpreted as threats toward the Walker officers in particular. Two posts threaten to release or actually do release information about the Walker officers. Another post identifies each of the eight officers (though their names have been redacted by the city), refers to each as a "suspected cop," and gives brief summaries of their work and education histories and marital statuses.

{¶ 28} In April 2023, after the grand jury decided not to indict the Walker officers, Akron Chief of Police Stephen L. Mylett and several other officers received nearly identical threats by mail, with the message, "Before the end of the years 16 blue badges will have to pay . . . ." Based on these facts, Chief Mylett believes revealing the names of the officers involved in these shootings would create a substantial risk of bodily harm and possibly even death to the officers and their families. In response to the city's evidence of threats against the officers, the Beacon Journal has presented an affidavit from James Raterman, a former agent with the

Ohio Bureau of Criminal Investigation, the United States Secret Service, and the United States Customs Service, who disputed the credibility of the risk to the officers. The Beacon Journal also presented evidence suggesting that the names of the eight officers involved in the Walker shooting had already been revealed in publicly available documents and online postings.

### 1. The Gross and Rodgers shootings

{¶ 29} The city's evidence does not demonstrate that the release of the unredacted records would create a substantial risk of serious bodily harm or death to the officers involved in the Gross and Rodgers shootings. These threats made by family members shortly after a shooting do not rise to the same levels that the courts considered in *Kallstrom* and *Craig*, in which the perceived threats came from criminals and gangs seeking revenge, at least one of which had a history of retaliatory violence against police. *Kallstrom*, 136 F.3d at 1063; *Craig*, 2012-Ohio-1999, at ¶ 5. Similarly, in *Keller*, the police department alleged that the officer's personnel records could be used for "nefarious ends" because the requester was a criminal defendant who had allegedly threatened the officer and his spouse. *Keller*, 1999-Ohio-264, at ¶ 3-4, 12. The evidence presented in this case with regard to the perceived threats made against the officers involved in the Gross and Rodgers shootings does not rise to the same level.

{¶ 30} Moreover, this court has also concluded that a threat that was unquestionably present at the time of an incident may recede over time. *See State ex rel. Quolke v. Strongsville City School Dist. Bd. of Edn.*, 2015-Ohio-1083, ¶ 28-30 (finding that a threat to replacement teachers had subsided since the end of a union strike). Even if the court assumes that the family members of Gross and Rodgers had intended to carry out their threats in late 2021 and early 2022, there is nothing in the record to suggest that these threats are ongoing. Significantly, the social-media evidence emphasized by the city does not refer to either the Rodgers or Gross shootings, suggesting that any threat associated with those shootings has dissipated.

{¶ 31} For these reasons, we grant a writ requiring Akron to disclose unredacted copies of the administrative-leave or reinstatement notices issued to police department employees from December 1, 2021, until March 18, 2022, as requested by the Beacon Journal in its March 21, 2022 public-records request.

*2. The Walker shooting*

{¶ 32} Akron's support for applying the *Kallstrom*/*Keller* exception to the names of the officers involved in the Walker shooting is more compelling. Numerous threats came from unidentified members of the public who crudely expressed their displeasure online or in letters to Chief Mylett and other officers. However, credible evidence exists that the officers' identities have already been publicly revealed, which would cut against applying the *Kallstrom/Keller* exception. *See Kallstrom v. Columbus*, 165 F.Supp.2d 686, 695-696 (S.D. Ohio 2001).

{¶ 33} However, we need not determine whether the *Kallstrom*/*Keller* exception allows the redaction of the officers' names from incident reports of the Walker shooting. As we have determined above, the names of the officers involved in the Walker shooting are exempt from disclosure under the CLEIR exception for records that would create a high probability of disclosing the identities of uncharged suspects.

**D. Statutory damages, attorney fees, and costs**

{¶ 34} The Beacon Journal requests statutory damages under R.C. 149.43(C)(2) based on its claimed entitlement to unredacted versions of the records already produced. A requester of public records is entitled to recover statutory damages when (1) he submits a written public-records request "by hand delivery, electronic submission, or certified mail," (2) the request "fairly describes the public record or class of public records to the public office or person responsible for the requested public records," and (3) "a court determines that the public office or the person responsible for public records failed to comply with an obligation" imposed by R.C. 149.43(B). Statutory damages accrue at a rate of $100 for each business day

during which the public office failed to comply with R.C. 149.43(B), starting from the day the mandamus action was filed, up to a maximum of $1,000. R.C. 149.43(C)(2).

{¶ 35} The court may reduce or decline to award statutory damages if it determines, based on the law at the time of the conduct, that "a well-informed . . . person responsible for the requested public records reasonably would believe that" respondents' conduct "did not constitute a failure to comply with [R.C. 149.43(B)]," R.C. 149.43(C)(2)(a), and "a well-informed . . . person responsible for the requested public records reasonably would believe that" respondents' conduct "would serve the public policy that underlies the authority that is asserted as permitting that conduct," R.C. 149.43(C)(2)(b).

{¶ 36} In responding to the Beacon Journal's requests, the city provided records containing all the information requested that the city believed was not exempt from disclosure. *See* R.C. 149.43(B)(1). The city's responses to the newspaper's requests cited the same basic arguments contained in the city's brief, i.e., CLEIR exceptions for uncharged suspects and physical safety and *Kallstrom/Keller*. The city also asserted the position, with which we agree, that the requests for personnel records for unnamed officers were tantamount to requests for information and therefore not proper under the Public Records Act.

{¶ 37} Based on the evidence in the record before us, we conclude that Akron's records custodian had reasonable bases for denying the Beacon Journal's requests for unredacted records. As noted above, we agree with Akron's position that the requests for personnel files, discipline records, and internal-investigation records of unidentified officers were tantamount to requests for information and were not valid public-records requests. We also agree with the city that the names of the eight officers involved in the Walker shooting were properly redacted under the CLEIR exception. We therefore deny statutory damages. We also deny attorney fees for the same reasons. *See State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 2018-

Ohio-5111, ¶ 34 (noting that the factors considered to determine whether attorney fees may be awarded are "identical to those allowing a reduction in statutory damages").

{¶ 38} The Beacon Journal is, however, entitled to recover its costs because we are granting the writ in part in this case. An award of court costs is mandatory in a public-records case when the court grants a writ of mandamus compelling a public office to comply with its duties under the Public Records Act. R.C. 149.43(C)(3)(a)(i); *State ex rel. Hedenberg v. N. Cent. Corr. Complex*, 2020-Ohio-3815, ¶ 13.

### III. CONCLUSION

{¶ 39} For the foregoing reasons, we grant a writ of mandamus ordering the city to (1) provide copies of the Walker incident reports that the Beacon Journal requested on June 28, 2022, redacting the names of *only* the eight officers who are uncharged suspects and (2) provide copies of the administrative-leave and reinstatement notices that the Beacon Journal requested on March 21, 2022, with the officers' names unredacted. We deny the writ in all other respects and deny the Beacon Journal's request for statutory damages and attorney fees. Costs are assessed to Akron.

Writ granted in part
and denied in part.

———————————

**BRUNNER, J., joined by DONNELLY, J., concurring in part and dissenting in part.**

{¶ 40} I concur in part in the judgment and agree in part with the per curiam opinion. However, I do not agree with the portion of the per curiam opinion that finds that the requests for personnel files and any discipline records or internal investigations of "officers under investigation related" to the Gross and Rodgers shootings were requests for information rather than proper requests for public

records. While releasing those records could have had the incidental effect of disclosing information from which the officers involved in the shootings could be identified, many public records could provide this or other identifying information—including those administrative-leave and reinstatement notices that the majority orders respondents, the City of Akron and the Akron Police Department (collectively, "the city") to release, unredacted, today. It is clear from relator Copley Ohio Newspapers, Inc., doing business as Akron Beacon Journal's request that it sought records, not particular information, when, on March 21, 2022, it requested:

- All administrative leave or reinstatement notices issued to any employees of the Akron Police Department from Dec. 1, 2021 until March 18, 2022.
- The personnel file, discipline records (if any), and internal investigations (if any) for officers under investigation relating to [the Gross shooting].
- The personnel file, discipline records (if any), and internal investigations (if any) for officers under investigation relating [to the Rodgers shooting].

I would grant the writ as to all the above-listed records. I would not limit the writ to only the unredacted administrative-leave or reinstatement notices and the partially unredacted incident reports from the Walker shooting.

{¶ 41} Because the majority does not require the city to release the personnel files or any discipline records or internal investigations of the officers under investigation related to the Gross and Rodgers shootings, I respectfully concur in part and dissent in part.

———————————

Taft Stettinius & Hollister, L.L.P., Lynn Rowe Larsen, W. Stuart Dornette,

Daniel H. Bryan, and Cary M. Snyder, for relator.

Vorys, Sater, Seymour and Pease, L.L.P., John J. Kulewicz, Rodney A. Holaday, and Matthew D. Fazekas, for respondents.

_____