**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Clark v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2025-Ohio-2473.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-2473

THE STATE EX REL. CLARK *v.* DEPARTMENT OF REHABILITATION AND CORRECTION.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Clark v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2025-Ohio-2473.]**

*Mandamus—Public Records Act—R.C. 149.43—Inmate entitled to writ for request seeking copies of electronic kites he sent to prison staff while incarcerated at an institution where he was previously housed because prison staff at institution where he is currently housed informed him that they would forward his request to the appropriate person at the other institution for response and that institution has not responded to the request—Inmate not entitled to writ for request seeking copies of chow-hall menu from institution where he is currently housed, because institution staffer who received request properly directed inmate to the appropriate person from whom to obtain the menu—Writ granted in part and denied in part— Statutory damages awarded as to the request for kites, and court costs denied.*

(No. 2024-0746—Submitted February 11, 2025—Decided July 15, 2025.)

IN MANDAMUS.

————————————

The per curiam opinion below was joined by DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ. KENNEDY, C.J., concurred in part and dissented in part, with an opinion. FISCHER, J., concurred in part and dissented in part and would not award statutory damages.

**Per Curiam.**

**{¶ 1}** Relator, Thomas Clark, filed this original action seeking a writ of mandamus ordering respondent, the Ohio Department of Rehabilitation and Correction ("DRC"), to provide copies of records responsive to public-records requests he sent in March and April 2024. Clark also seeks $2,000 in statutory damages and an award of court costs. Also pending is Clark's motion for leave to file rebuttal evidence.

**{¶ 2}** We deny Clark's motion for leave to file rebuttal evidence, grant the writ with respect to the March 2024 public-records request, and deny the writ with respect to the April 2024 request. We award Clark $1,000 in statutory damages but deny his request for an award of court costs.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**{¶ 3}** Clark is incarcerated at the Lebanon Correctional Institution ("LCI"). Previously, Clark was incarcerated at the North Central Correctional Complex ("NCCC"). This case relates to public-records requests that Clark sent by electronic kite[1] to LCI staff.

### A. The March 2024 Request

**{¶ 4}** On March 25, 2024, Clark sent a public-records request by electronic kite to the LCI inspector's office, requesting paper copies of 13 electronic kites he sent to either unit managers or an inspector at NCCC from October 30, 2020, through March 19, 2021. He also requested paper copies of four electronic kites he sent to "Food Service" at LCI in April and May 2022.

---

1. A kite is a means of communication between inmates and prison staff. *See State ex rel. McDougald v. Greene*, 2020-Ohio-3686, ¶ 16; *see also State ex rel. Griffin v. Sehlmeyer*, 2021-Ohio-1419, ¶ 21 (describing the system by which inmates and DRC staff transmit kites electronically).

**{¶ 5}** One week later, LCI's chaplain, T. Palmer, who at that time was temporarily filling the role of institutional inspector at LCI, responded to Clark by return kite as follows: "I will get you the ones for [LCI]. I have forwarded [your] NCCC request to [the] inspector at NCCC." The kite log indicates that Palmer emailed NCCC's inspector, Lori Shuler, at a DRC email address, informing Shuler that an inmate had requested copies of kites from NCCC.

**{¶ 6}** On May 13, Clark sent a follow-up kite to the LCI inspector's office, acknowledging his receipt of the LCI kites he had requested and asking for an update on the status of his request for the NCCC kites: "I spoke with an Inspector Cole a few weeks ago and he also said he would work on getting these for me." Clark was referring to Steven Cole, who assumed the role of institutional inspector at LCI in April 2024. Cole responded to Clark's May 13 kite: "I will forward [your request] to [NCCC] for them to print the [kites you seek] from them." According to Clark, NCCC's inspector has never responded to his public-records request and has not provided the requested kites to Clark.

### B. The April 2024 Request

**{¶ 7}** On April 28, 2024, Clark sent an electronic kite to the food-service staff at LCI, requesting "a paper copy of the new Summer 2024 Master Chow Hall Menu for weeks one, two, and three, that just went into effect." Lieutenant B. Holley responded to Clark the next day by electronic kite as follows: "I do not print. I am responsible for pictures and gtl [sic] printing. This will be done through your unit staff. I have submitted them all copies of the new menu to post in the block areas." Clark contends that Lieutenant Holley should have contacted Clark's unit staff and arranged for Clark to receive a printed copy of the requested menu.

### C. This Mandamus Action

**{¶ 8}** Clark filed this action on May 28, 2024, alleging that DRC had failed to promptly provide him with copies of 13 of the 17 kites he sought in his March 2024 public-records request and that his April 2024 request for the chow-hall menu had been unlawfully denied. Clark seeks a writ of mandamus ordering DRC to provide him with paper copies of the aforementioned records. He also seeks $2,000 in statutory damages and an award of court costs.

**{¶ 9}** DRC filed an answer, denying that Clark is entitled to paper copies of the records he requested. DRC also denies (1) that it failed to respond promptly to Clark's March 2024 public-records request and (2) that the records custodian responsible for maintaining the chow-hall menu unlawfully denied Clark's April 2024 public-records request. We granted an alternative writ. 2024-Ohio-2937.

**{¶ 10}** In addition to his evidence and merit brief, Clark filed a motion for leave to file rebuttal evidence, attaching three exhibits that, he argues, rebut the affidavit testimony of Ellen Myers, a warden's administrative assistant at LCI who also serves as LCI's public-information officer, which DRC submitted as evidence. DRC opposes the motion for leave.

## II. ANALYSIS

### A. Motion for Leave to File Rebuttal Evidence

**{¶ 11}** Under our rules of practice, a relator in an original action may seek leave to submit rebuttal evidence. Rule 12.06(B). Rebuttal evidence "is that given to explain, refute, or disprove new facts introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence." *State v. McNeill*, 1998-Ohio-293, ¶ 44.

**{¶ 12}** Clark purports to offer evidence to rebut Myers's affidavit testimony. Myers testified in her affidavit that she was appointed as LCI's public-information officer "to solely receive and handle [LCI's] public records requests from both the public and from incarcerated persons." According to Myers, she and other prison staff have advised Clark several times that he should direct his public-records requests to her as the warden's administrative assistant and public-information officer. Myers avers that Clark nevertheless did not send to her either of the public-records requests at issue in this case. Regarding the March 2024 request in which Clark sought copies of kites he had sent to prison staff while incarcerated at NCCC, Myers attests that Clark "was made aware by prison staff that in order to obtain public records originating from another institution, he must make that request to the [public-information officer] of [the] institution from where the records originated." Further, according to Myers, NCCC "is a private, for-profit institution not within the control of [DRC]."

{¶ 13} Clark seeks leave to submit three exhibits as evidence to rebut Myers's affidavit testimony: (1) three pages from DRC's motion for sanctions filed against Clark in *State ex rel. Clark v. Dept. of Rehab. & Corr.*, Supreme Court case No. 2022-1070, (2) a copy of the electronic-kite log pertaining to his March 2024 public-records request, showing that NCCC Inspector Shuler has a DRC email address, and (3) a May 27, 2024 electronic kite that Clark sent to Myers at LCI, requesting a copy of his kite logs from 2018 to the present. None of these exhibits, however, qualifies as rebuttal evidence.

{¶ 14} Clark offers the first document, which he identifies as "Exhibit 3," to rebut Myers's affidavit testimony in which she avers that Clark was required to request the NCCC kites directly from NCCC and could not request them from prison staff at LCI. We deny Clark's motion for leave to submit "Exhibit 3" as rebuttal evidence. Clark is offering as evidence the argument of DRC's counsel from a motion that DRC filed in an unrelated mandamus action. *See State ex rel. Cincinnati Enquirer v. Forsthoefel*, 2022-Ohio-3580, ¶ 15 (attorneys' arguments are not evidence). Moreover, DRC's argument in that unrelated case, which Clark emphasizes in his motion for leave, is of no relevance here. In its motion for sanctions against Clark in Supreme Court case No. 2022-1070 (Mar. 11, 2024), DRC was not arguing how Clark should have submitted a public-records request but, rather, how Clark could have submitted his payment for copies of the public record he sought, which was a condition of the writ this court issued, *see Clark v. Dept. of Rehab. & Corr.*, 2023-Ohio-4183, ¶ 13. Because Clark's "Exhibit 3" to his motion for leave does not tend to explain, refute, or disprove the facts introduced by Myers's affidavit testimony in this case, it is inadmissible as rebuttal evidence.

{¶ 15} The second and third documents Clark seeks to have admitted as rebuttal evidence, which he identifies as "Exhibit A" and "Exhibit 2-E," respectively, also are not rebuttal evidence. Clark filed both of these documents as part of his evidentiary submission in this case, and evidence that has been submitted as part of a relator's affirmative case does not constitute rebuttal evidence. *See State ex rel. Brill v. Lorain Cty. Bd. of Elections*, 2024-Ohio-4990, ¶ 27.

{¶ 16} Accordingly, we deny Clark's motion for leave to file rebuttal evidence.

## B. Mandamus

**{¶ 17}** "[U]pon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1).[2] Mandamus is an appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act. R.C. 149.43(C)(1)(b). To obtain a writ of mandamus, Clark must show by clear and convincing evidence that he has a clear legal right to the requested relief and that DRC has a clear legal duty to provide it. *State ex rel. Clark v. Dept. of Rehab. & Corr.*, 2024-Ohio-770, ¶ 6.

### 1. Clark Was Not Required to Direct His Public-Records Requests to Myers

**{¶ 18}** DRC argues that Clark cannot show entitlement to a writ of mandamus, because he "had clear knowledge as to whom he was [to] direct his public records requests" and did not do so. DRC contends that Clark should have delivered his requests to Myers as LCI's public-information officer.

**{¶ 19}** In support of this argument, DRC first cites Clark's alleged admission of such knowledge in his own affidavit and evidence filed in *State ex rel. Clark v. Ohio Dept. of Rehab. & Corr.*, Supreme Court case No. 2024-0437 (Aug. 2, 2024), another mandamus claim filed by Clark in this court pertaining to public-records requests. That affidavit and evidence, however, were not filed by DRC as part of its evidence in *this* case. But even assuming that we could rely on evidence outside the record of this case in deciding this matter, the exhibits DRC cited in Supreme Court case No. 2024-0437 do not support its contention. Those exhibits establish, at most, that Clark is aware that Myers is a custodian of records at LCI and that she responds to public-records requests as part of her job duties. That evidence does not, however, support DRC's argument that Myers is the *only* person to whom public-records requests may be directed at LCI, much less that Clark knew that to be the case.

---

2. The General Assembly amended R.C. 149.43 in 2024 Sub.H.B. No. 265 with an effective date of April 9, 2025. This opinion applies the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

{¶ 20} DRC also relies on its public-records policy as support for its contention that Clark knew that Myers is the person to whom he needed to direct his public-records requests. Under DRC Policy No. 07-ORD-02, a "public records coordinator" is designated at each institution to (1) "manage the processing of public record requests" and (2) oversee the institution's compliance with the policy and Ohio's public-records law. DRC Policy No. 07-ORD-02(VI)(A)(1) and (B)(1), https://drc.ohio.gov/about/resource/policies-and-procedures%20/07-ord-offender-records (accessed Apr. 22, 2025) [https://perma.cc/NU6G-Q2K8]. The policy also contains procedures for DRC staff to follow when evaluating and responding to public-records requests. DRC Policy No. 07-ORD-02(VI)(C) through (I).

{¶ 21} Nothing in Policy No. 07-ORD-02, however, *requires* that public-records requests be submitted exclusively to the institution's public-records coordinator. Moreover, the policy refers to the responsibilities of DRC's "staff" with respect to evaluating and responding to public-records requests. *See* DRC Policy No. 07-ORD-02(VI)(C) through (F). Thus, the policy itself contemplates that institutional staff other than the public-records coordinator may receive public-records requests, retrieve responsive records, and communicate with the requester about the request. *See id.* Accordingly, the evidence does not support DRC's argument that Clark's public-records requests at issue here were properly denied for his failure to submit the requests to Myers.

{¶ 22} Myers also attests in her affidavit that the inmate manual issued to LCI inmates in 2023 and 2024 instructs inmates that they "'may contact the Warden's Assistant regarding any questions or requests for public information.' " The manual also states that the warden's assistant serves as the public-information officer. Nowhere in its merit brief, however, does DRC argue that the inmate manual required Clark to direct his public-records requests solely to Myers as the warden's administrative assistant and public-information officer at LCI. Accordingly, DRC has waived any argument based on the inmate manual. *See HealthSouth Corp. v. Levin*, 2009-Ohio-584, ¶ 18, fn. 2 (party may be deemed to have waived an argument that is omitted from its merit brief), citing *E. Liverpool v. Columbiana Cty. Budget Comm.*, 2007-Ohio-5505, ¶ 3. In any event, the inmate manual states that an inmate *may* submit requests for public information to the warden's assistant. It does not say

that the warden's assistant is the *only* person from whom an inmate may request such information.

### 2. DRC Did Not Comply with Its Obligations under R.C. 149.43(B)(1) With Regard to One of Clark's Public-Records Requests

{¶ 23} DRC argues that even if Clark were not required to direct his public-records requests to Myers, Clark still would not be entitled to relief, because he did not follow instructions to direct his requests to the persons responsible for the requested records.

{¶ 24} R.C. 149.43(B)(1) states:

> Upon request by any person . . . all public records responsive to the request shall be promptly prepared and made available for inspection to the requester at all reasonable times during regular business hours . . . , [and] upon request by any person, *a public office or person responsible for public records* shall make copies of the requested public record available to the requester at cost and within a reasonable period of time.

(Emphasis added.) Accordingly, the obligation to provide copies of public records to a requester arises when the request has been submitted to the public office or person responsible for the records being requested.

{¶ 25} Although R.C. 149.43 imposes obligations on public offices and persons responsible for public records, "that does not mean that every employee . . . of a public office who receives a public-records request must directly respond to the request." *State ex rel. Ware v. Dept. of Rehab. & Corr.*, 2024-Ohio-1015, ¶ 32 (lead opinion); *see also id.* at ¶ 53 (DeWine, J., concurring in part and dissenting in part) ("There is nothing unreasonable or unlawful about a prison establishing a point of contact who is responsible for responding to public-information requests."). Thus, a plurality of this court in *Ware* concluded that "a public office complies with the Public Records Act when an employee . . . of the office who

is not responsible for a public record directs the requester to the proper records custodian or to where the record may be located," *Ware* at ¶ 33; *see also State ex rel. Griffin v. Szoke*, 2023-Ohio-3096, ¶ 9 (inmate failed to show that DRC employee in the institution where inmate was incarcerated did not comply with an obligation under the Public Records Act when that employee responded to the request by telling inmate he had to submit his public-records request to the public-information officer at the institution from which he sought records).

{¶ 26} DRC argues that it complied with its obligations under the Public Records Act because LCI staff referred Clark to the proper person from whom to obtain records responsive to his public-records requests. DRC's argument has merit only as to the April 2024 request.

### a. The chow-hall menus

{¶ 27} In April 2024, Clark requested a copy of certain chow-hall menus, which Lieutenant Holley declined to provide, telling Clark instead (1) that he was not responsible for providing copies of the menus to inmates and (2) that Clark had to obtain copies of the menus from his unit manager. Clark mischaracterizes this as a denial of his public-records request for the chow-hall menus. But Lieutenant Holley did not fail to comply with the Public Records Act by directing Clark to the appropriate person from whom to obtain the requested record. *See Ware* at ¶ 33 (lead opinion). And the record in this case does not contain any evidence indicating that Clark heeded Lieutenant Holley's direction to obtain copies of the chow-hall menus from his unit manager.

{¶ 28} Because Lieutenant Holley advised Clark from whom he could obtain the records he sought, Clark has not shown that DRC denied his request for copies of the menus. Accordingly, Clark has not proved by clear and convincing evidence that DRC has failed to comply with an obligation under R.C. 149.43(B)(1) with respect to his April 2024 public-records request. *See Ware*, 2024-Ohio-1015, at ¶ 32-33 (lead opinion); *id.* at ¶ 55 (DeWine, J., concurring in part and dissenting in part); *Griffin*, 2023-Ohio-3096, at ¶ 9.

### b. The NCCC kites

{¶ 29} In his March 2024 public-records request, Clark sought paper copies of 17 electronic kites, 13 of which he had sent to prison staff at NCCC while incarcerated there and

4 of which he had sent to "Food Service" at LCI. Clark admits that he received copies of the LCI kites, but he contends that none of the NCCC kites he requested have been given to him.

{¶ 30} DRC acknowledges that it has not provided Clark with copies of the NCCC kites he requested, but DRC argues that it has not failed to comply with any of its obligations under the Public Records Act, because Clark did not submit his public-records request to the proper person. In her affidavit, Myers attests that in response to Clark's March 2024 kite, Clark was advised that he had to request the records he sought from the public-information officer "of [the] institution from where the records originated." Similarly, LCI Institutional Inspector Cole attests in an affidavit that he personally spoke with Clark on or about April 14, 2024, and advised him that he was required to direct his request for the NCCC kites to the public-information officer at NCCC to obtain paper copies of those records. Thus, DRC argues that it has not failed to comply with an obligation under the Public Records Act, because DRC staff directed Clark to the custodian of the records he sought.

{¶ 31} DRC's argument is unpersuasive as to the NCCC kites because Myers's and Cole's testimony is belied by the evidence in the record. Clark submitted as evidence the full electronic-kite log related to his March 2024 public-records request, which includes messages he exchanged with the LCI inspector's office between March 25 and May 29, 2024. Contrary to Myers's affidavit testimony, these communications do not show that LCI staff advised Clark to contact NCCC's public-information officer directly to obtain copies of the NCCC kites he sought. To the contrary, Clark was advised twice—first by then-acting Inspector Palmer and later by Inspector Cole—that LCI would forward Clark's request for copies of the NCCC kites to NCCC. The kite log also shows that while serving as the acting inspector at LCI, Palmer emailed NCCC Inspector Shuler about Clark's public-records request.

{¶ 32} Cole's averment that he verbally advised Clark on April 14, 2024, to send his public-records request directly to NCCC does not serve to defeat Clark's mandamus claim as to the NCCC kites. The evidence shows that before this alleged conversation on April 14, then-acting Inspector Palmer forwarded Clark's request to Inspector Shuler at NCCC. Accordingly, the evidence shows that as of April 14, Clark's request for copies of the NCCC kites had been submitted to Inspector Shuler at NCCC. DRC has not explained why it

10

contends that Clark should have sent his public-records request to NCCC directly when DRC had already informed him that his original request was sent there on his behalf. Moreover, Cole informed Clark in a May 13 kite: "I will have the [LCI] kites printed out. I will forward to [NCCC] for them to print out the ones [you seek] from them." Thus, regardless of what Cole allegedly told Clark on April 14, the evidence shows that a month later, Cole informed Clark that he would forward Clark's public-records request to NCCC himself.

{¶ 33} Based on the evidence of record, Clark has demonstrated by clear and convincing evidence that he submitted his request for copies of the NCCC kites to prison staff in the LCI inspector's office, who in turn forwarded the request to NCCC. DRC does not point to anything in the Public Records Act that requires Clark to do anything more for his April 2024 public-records request to be properly submitted.

{¶ 34} Assuming Clark's March 2024 public-records request was in fact transmitted to NCCC (as the evidence demonstrates in this case), DRC offers another argument for why Clark is not entitled to relief as to that request. DRC notes that NCCC is a private institution run by Management and Training Corporation ("MTC"). Accordingly, DRC argues that it "does not have control or possession of the records" at NCCC.

{¶ 35} DRC's argument is unpersuasive. While it is true that NCCC is a private institution, MTC operates it in accord with a contract it has with DRC. *See State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 2016-Ohio-478, ¶ 3-4; *see generally* R.C. 9.06 (authorizing and prescribing requirements for contracts related to private operation of correctional facilities). And as we recently observed in *State ex rel. Brown v. Columbiana Cty. Jail*, the fact that a private entity operates a correctional facility does not extinguish the correctional facility's duties as a public office to comply with the Public Records Act. 2024-Ohio-4969, ¶ 20-21.

{¶ 36} In *Brown*, the public-records requester sought jail records from a sheriff's office. Some of the records requested were from a period when the jail was operated by a private administrator under a contract with the sheriff's office. The sheriff's office argued that it had fulfilled its duty under the Public Records Act by providing the requester with copies of the records in its possession and by directing the requester to obtain the remaining records from the private jail operator. We disagreed. "Whether the private entities also have

a duty to disclose the public records they hold is irrelevant to the public office's duty under the quasi-agency test." *Id.* at ¶ 17, citing *State ex rel. Armatas v. Plain Twp. Bd. of Trustees*, 2021-Ohio-1176, ¶ 15, fn. 3.

{¶ 37} Under the quasi-agency test, when a public office contracts with a private entity, the records held by the private entity are public records if "(1) [the] private entity prepares [the] records in order to carry out a public office's responsibilities, (2) the public office is able to monitor the private entity's performance, and (3) the public office has access to the records for this purpose." *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 39 (1990). When a requester has proved the first prong of the quasi-agency test, that alone is sufficient to establish that records prepared by the private entity that relate to its delegated functions are public records. *Brown* at ¶ 18, citing *Armatas* at ¶ 16. And when the quasi-agency test is satisfied, "the public office has a duty to obtain requested records from the private entity and disclose them to the requester." *Id.* at ¶ 21.

{¶ 38} Our decision in *Brown* applies here. Clark requested copies of kites he had sent to prison staff at NCCC while he was incarcerated there. Those records relate to the function DRC delegated to MTC under their contract—operating the prison—and are therefore public records. *See Brown*, 2024-Ohio-4969, at ¶ 19. Indeed, we have held that electronic kites are public records subject to disclosure under R.C. 149.43 because they "document operations and activities of the prison, namely, the institution's communications with [inmates]." *State ex rel. Mobley v. Ohio Dept. of Rehab. & Corr.*, 2022-Ohio-1765, ¶ 26. Accordingly, DRC has a duty to obtain the requested records from NCCC. *See Brown* at ¶ 21.

{¶ 39} It can be inferred from the evidence in this case that DRC (through its staff at LCI) understood that duty because instead of ignoring Clark's request for copies of the NCCC kites, LCI's then-acting inspector, Palmer, and later LCI Inspector Cole forwarded Clark's public-records request to Inspector Shuler at NCCC. However, Clark contends that Shuler never responded to his request, and DRC has not presented any evidence to the contrary. We therefore grant a writ of mandamus ordering DRC to provide Clark with copies of the 13 NCCC kites he asked for in his March 2024 public-records request.

### C. Statutory Damages and Court Costs

{¶ 40} The applicable version of R.C. 149.43(C)(2) in effect when Clark made both his March and April 2024 public-records requests and when he filed this original action entitles a public-records requester to damages if (1) he made a public-records request by one of the statutorily prescribed methods, (2) he made the request "to the public office or person responsible for the requested public records," (3) he fairly described the documents being requested, and (4) the public office or person responsible for the requested records failed to comply with an obligation under R.C. 149.43(B). *See* 2023 Am.Sub.H.B. No. 33. Clark sent his March 2024 public-records request by electronic kite, which qualifies as electronic delivery for purposes of statutory damages. *See State ex rel. Griffin v. Sehlmeyer*, 2021-Ohio-1419, ¶ 21. The record also establishes that Clark's request was delivered to the public office responsible for the records he sought and that he fairly described the records sought (i.e., 13 electronic kites specified by date and kite number). And as stated above, DRC failed to comply with R.C. 149.43(B)(1) by failing to provide Clark with the 13 kites from NCCC that he requested. Accordingly, Clark has established that he is entitled to statutory damages with regard to his March 2024 public-records request.

{¶ 41} DRC argues that this court should not award statutory damages, because such damages "should only be awarded when there is a showing of bad faith" and Clark has made no such showing here. DRC contends that there is no evidence that the DRC staffers who responded to Clark's public-records request engaged in bad faith in their dealings with Clark. However, a public office's good or bad faith is irrelevant in a statutory-damages analysis when, as here, that public office has failed to comply with an obligation under R.C. 149.43(B)(1). *See State ex rel. Horton v. Kilbane*, 2022-Ohio-205, ¶ 18.

{¶ 42} DRC also mentions in its merit brief that under R.C. 149.43(C)(2), this court may reduce or not award statutory damages if it determines that (1) based on the law as it existed at the time of the public-records request, a well-informed person responsible for the requested public records would have believed that his conduct did not constitute a failure to comply with an obligation under R.C. 149.43(B) and (2) a well-informed person responsible for the requested public

records would have believed his conduct served the public policy that underlies the authority asserted as permitting said conduct. DRC does not, however, make any argument as to how the version of R.C. 149.43(C)(2) that was in effect when Clark made his public-records request and filed his mandamus petition applies to this case. *See In re Application of Columbus S. Power Co.*, 2011-Ohio-2638, ¶ 19 ("it is not generally the proper role of this court to develop a party's arguments").

{¶ 43} As for the amount of damages Clark should recover, R.C. 149.43(C)(2) allows for an award of $100 for each business day during which DRC failed to comply with R.C. 149.43(B)(1), beginning on the date Clark commenced this action, up to a maximum of $1,000. *See* 2023 Am.Sub.H.B. No. 33. Since DRC does not dispute that it has failed to produce copies of the 13 NCCC kites Clark requested in March 2024 and Clark filed this action in May 2024, we award him $1,000 in statutory damages.

{¶ 44} Finally, Clark also asks for an award of court costs. We deny that request because Clark filed an affidavit of indigency in this matter and, thus, he has not incurred any court costs. *See State ex rel. Woods v. Lawrence Cty. Sheriff's Office*, 2023-Ohio-1241, ¶ 12.

## III. CONCLUSION

{¶ 45} We deny Clark's motion for leave to file rebuttal evidence and deny the writ as to Clark's April 2024 public-records request. We grant the writ, however, as to Clark's March 2024 public-records request and order DRC to provide Clark with copies of the 13 NCCC kites he requested. We also award Clark $1,000 in statutory damages but deny his request for an award of court costs.

Writ granted in part
and denied in part.

_____

**KENNEDY, C.J., concurring in part and dissenting in part.**

{¶ 46} Relator, Thomas Clark, an incarcerated person, transmitted two public-records requests through electronic kites to two public offices at the Lebanon Correctional

Institution ("LCI").  I agree with the court's judgment (1) granting a writ of mandamus compelling respondent, the Ohio Department of Rehabilitation and Correction ("ODRC"), to fulfill Clark's March 2024 request for copies of electronic kites he sent to unit managers or inspectors at another institution during a specified period, (2) awarding Clark $1,000 in statutory damages related to that request, and (3) denying Clark's motion for leave to file rebuttal evidence.

{¶ 47} I part ways with the majority, however, regarding its decision to deny Clark a writ of mandamus compelling ODRC to produce a copy of the chow-hall menu that Clark sought in his April 2024 public-records request.  Lieutenant B. Holley unlawfully denied that public-records request when he instructed Clark to retrieve the requested record from his unit staff.  Therefore, I would order ODRC to produce the menu to Clark and would award Clark statutory damages in the amount of $1,000 related to that request. Accordingly, I concur in part and dissent in part.

### Ohio's Public Records Act

{¶ 48} The language of R.C. 149.43(B)(1)[3] is straightforward: subject to an exception not applicable here, "upon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time."  R.C. 149.43(B)(1) sets forth when copies must be made available—"upon request."  It also says to whom the request must be sent—to "a public office or person responsible for public records," *id.*  And it dictates who must fulfill the request—again, "a public office or person responsible for public records," *id.*

{¶ 49} Importantly, R.C. 149.43(B)(1) uses "a"—not "the"—in the phrase "a public office or person."  "A" is an indefinite article meaning "any" and applying to more than one thing.  *See United States v. Alabama*, 778 F.3d 926, 933 (11th Cir. 2015).  In contrast, the definite article "the" specifies that the object being referred to is a discrete thing.  *See Niz-Chavez v. Garland*, 593 U.S. 155, 165 (2021).  Hence, R.C. 149.43(B)(1)

---

3. The General Assembly amended R.C. 149.43 in 2024 Sub.H.B. No. 265 with an effective date of April 9, 2025.  This opinion applies the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

permits a public-records requester to send his request to *any* public office or person responsible for the requested public record, and *any* public office or person responsible for the requested public record who receives the request is required to fulfill it.

*Who Is Responsible for Public Records*

**{¶ 50}** The next question is who is responsible for public records? "Responsible" means "[h]aving a duty to be in charge of something or to look after someone or something." *Black's Law Dictionary* (12th Ed. 2024). And our caselaw has frequently referred to the person responsible for public records as the "public-records custodian." *E.g.*, *State ex rel. Copley Ohio Newspapers, Inc. v. Akron*, 2024-Ohio-5677, ¶ 11, quoting *State ex rel. Miller v. Ohio State Hwy. Patrol*, 2013-Ohio-3720, ¶ 23. So a public office or person responsible for public records, by definition, is one who looks after and keeps those records.

*Duties upon Receiving a Public-Records Request*

**{¶ 51}** When a request is made to a public office or person responsible for public records, Ohio's Public Records Act, R.C. 149.43, dictates certain actions that the public office—acting through its officials and employees—or the person responsible for the requested public records must take.

**{¶ 52}** A public office or person responsible for public records must make copies of the requested records available to the requester at cost and within a reasonable period, unless the records contain information that is exempt from production, R.C. 149.43(B)(1), the requester makes an "ambiguous or overly broad" request, R.C. 149.43(B)(2), or the public office or the person responsible for the requested public records cannot reasonably identify which records are being requested, *id.* And "[i]f a request is ultimately denied, in part or in whole, the public office or the person responsible for the requested public record shall provide the requester with an explanation, including legal authority, setting forth why the request was denied." R.C. 149.43(B)(3).

**{¶ 53}** What the public office or the person responsible for the requested public record cannot do is ignore a request or deny a request without explanation.

**Clark's April 2024 Public-Records Request**

{¶ 54} On April 28, 2024, Clark sent an electronic kite to food-service staff at LCI, requesting a copy of the "new Summer 2024 Master Chow Hall Menu" for a three-week period. The next day, Lieutenant Holley responded to the kite, stating that he does not print the menu and that he had already submitted copies of the menu to Clark's unit staff. Lieutenant Holley then closed the request, and no subsequent action was taken by anyone else at LCI to provide Clark with the requested menu.

{¶ 55} The majority contends that Lieutenant Holley did not fail to comply with the Public Records Act, because he "direct[ed] Clark to the appropriate person from whom to obtain the requested record." Majority opinion, ¶ 27; *see also id.* at ¶ 28. However, contrary to the majority, I would hold that Lieutenant Holley failed to comply with the Public Records Act when he directed Clark to another staff member at LCI—here, Clark's unit staff—to obtain the requested record. Once Lieutenant Holley chose to respond to Clark's public-records request, he was required to follow the law as outlined in R.C. 149.43(B). *See State ex rel. Teagarden v. Igwe*, 2024-Ohio-5772, ¶ 105 (Kennedy, C.J., concurring in part and dissenting in part).

{¶ 56} Lieutenant Holley had possession of the requested chow-hall menu: he admitted as much in his response to Clark when he stated, "I have submitted [to unit staff] copies of the new menu to post in the block area." He also said that he does not print the menus. Those statements by Lieutenant Holley show that he had an electronic copy of it. Hence, Lieutenant Holley is a person who kept the menu—in other words, he was a person responsible for it—and he did not assert a valid ground for denying the request, so he was required under R.C. 149.43(B) to produce the menu in response to Clark's April 2024 public-records request. After all, a person responsible for public records is a person who looks after and keeps those records, and as discussed above, a person responsible for public records must make copies of the requested records available to the requester at cost and within a reasonable period, unless an exemption or other permissible ground for denying the request applies. *See* R.C. 149.43(B)(1).

{¶ 57} Consequently, Clark is entitled to a writ of mandamus compelling ODRC to produce copies of the requested chow-hall menu to him. Clark is also eligible for an

award of statutory damages under R.C. 149.43(C)(2) because of Lieutenant Holley's failure to comply with the requirements of R.C. 149.43(B). And because ODRC has not produced copies of the menu to Clark since the filing of this writ action in May 2024, Clark is entitled to statutory damages in the amount of $1,000. *See* R.C. 149.43(C)(2).

## Conclusion

{¶ 58} Clark transmitted two public-records requests to public offices at LCI, and ODRC failed to properly respond to either one. The majority correctly concludes that LCI staff failed to comply with its obligations under the Public Records Act with regard to the March 2024 request and therefore grants a writ ordering ODRC to produce to Clark copies of the requested records that have been withheld and awards Clark $1,000 in statutory damages related to that request. But the majority incorrectly determines that the April 2024 request was properly resolved once Lieutenant Holley directed Clark to obtain a copy of the requested chow-hall menu from his unit staff.

{¶ 59} Therefore, I would grant a writ ordering ODRC to produce the chow-hall menu responsive to Clark's April 2024 public-records request and would award Clark $1,000 in statutory damages related to that request. Because the court does not, I concur in part and dissent in part.

––––––––––––––––

Thomas Clark, pro se.

Dave Yost, Attorney General, and D. Chadd McKitrick, Assistant Attorney General, for respondent.

––––––––––––––––––––––––